UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN STEVEN HALLMAN,<br><br>    Petitioner,<br><br>  v.<br><br>G. D. LEWIS, warden,<br><br>    Respondent.                             / | No. C 12-3006 SI (pr)<br><br>**ORDER DENYING HABEAS PETITION** |

## INTRODUCTION

John Steven Hallman filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. He claims that his constitutional right to be free of ex post facto laws was violated when prison officials applied to him a statute that had been amended as of January 25, 2010 to decrease the time credits he would earn in prison. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A.    <u>Hallman's Criminal And Prison History</u>

Hallman is serving a 22-year prison sentence for assault with a deadly weapon, with a habitual criminal enhancement. He committed the crime in 2000, and was convicted and sentenced that same year. *See* Resp. Ex. 1.

In 2008, Hallman was validated most recently as an associate of the Mexican Mafia prison gang. He was given an indeterminate term in the security housing unit ("SHU") due to his gang validation, *see id.,* and is now housed in the SHU at Pelican Bay State Prison.

Under state regulations and rules of the California Department of Corrections & Rehabilitation ("CDCR"), an inmate who has been validated as a gang affiliate and placed in the SHU may be eligible to be reviewed for inactive gang status after six years of non-involvement in gang activity. *See* Cal. Code Regs. tit. 15, § 3378(e). As there is no evidence that Hallman has debriefed, been validated as a prison gang dropout, or been deemed inactive in the gang, he still qualifies as a gang affiliate under the regulations.

Hallman does not challenge the gang validation or SHU placement in this action. Instead, he challenges a change in the law that has adversely affected the rate at which he earns time credits. He contends that an amendment to California's laws and to California Code of Regulations § 3044 has adversely impacted the rate at which he receives time credits on his sentence. Under the former law, SHU inmates like him were assigned to work group D-1 and were awarded one day of credit for every two days served; after the change in the law, those inmates were reassigned to work group D-2, and consequently ceased earning such credits. That, in turn, apparently will lengthen the time he spends in prison by almost two years. *See* Docket # 1-1, p. 3.

B.   The Change In The Law

California Penal Code § 2933.6 was amended effective January 25, 2010 to make certain prison gang members and associates ineligible for some time credits. "Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) *or upon validation as a prison gang member or associate* is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct." Cal. Penal Code § 2933.6 (as amended effective Jan. 25, 2010)

2

(emphasis added). The 2010 amendment added the italicized phrase to § 2933.6.

Before the 2010 amendment, "it was apparently possible for validated prison gang members placed in an [administrative segregation unit] to earn conduct credits totaling one-third of their sentences." *In re Efstathiou*, 200 Cal. App. 4th 725, 728 (Cal. Ct. App. 2011). After the amendment, a validated gang member or associate in administrative segregation could not earn such conduct credits.

C.    Hallman's Habeas Petitions

Hallman filed unsuccessful petitions for writ of habeas corpus in the state courts asserting his Ex Post Facto Clause challenge to § 2933.6 as applied to him. The Del Norte County Superior Court rejected his petition in a short but reasoned decision. The court found that credits earned before the effective date of the new law were retained by the petitioner and that the law was not being applied retrospectively because the credit-earning change only applied going forward as of the effective date of the amended statute. *See* Resp. Ex. 7. "It is because of the inmate's continued validated gang membership that he remains in the SHU, and subject to the amended provisions of P.C. 2933.6. Petitioner has no right to continue to receive credits under the old statute. The amended statute, since it is applied only prospectively, does not constitute an ex post facto law." Resp. Ex. 7. The California Court of Appeal and the California Supreme Court summarily denied Hallman's habeas petitions. *See* Resp. Exs. 9 and 12.

Hallman then filed a federal petition for writ of habeas corpus in which he raised his Ex Post Facto Clause challenge. The court issued an order to show cause why the petition should not be granted. Respondent filed an answer. Petitioner filed a traverse. The matter is ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief brought under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the execution of a sentence for a prisoner incarcerated in Del Norte County, California,

3

which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c). Petitioner has exhausted state judicial remedies as to his Ex Post Facto Clause challenge to § 2933.6 as applied to him

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 is the proper jurisdictional basis for a habeas petition attacking the execution of the sentence by a petitioner in custody pursuant to the judgment of a State court. *See White v. Lambert*, 370 F.3d 1002, 1004 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

4

if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.[1]

## DISCUSSION

Due to the amendment of § 2933.6, Hallman has earned fewer time credits after January 25, 2010 than he would have earned under the former law. Hallman contends that applying the amended § 2933.6 to him violates the Ex Post Facto Clause because the 2010 amendment increased the punishment for his 2000 crime. Respondent contends that the amended § 2933.6 does not increase the punishment for Hallman's 2000 crime and instead penalizes his prison misconduct (i.e., active association with a prison gang) occurring after January 25, 2010, and therefore is not an impermissible ex post facto law.

A.  <u>The Constitutional Provision And Its Application By The Supreme Court</u>

Article I, section 10 of the United States Constitution prohibits the States from passing

---

[1] Hallman urges that no AEDPA deference is required when the state court does not explain its analysis or cite any cases in rejecting a claim. Traverse, p. 11. The Supreme Court has decided otherwise. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (one-sentence order denying habeas petition analyzed under §2254(d)); *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) (order that discusses state law claim but not federal claim rebuttably presumed to be rejection on the merits and therefore subject to § 2254(d)).

1 any ex post facto law.  "To fall within the ex post facto prohibition, a law must be retrospective
2 -- that is, 'it must apply to events occurring before its enactment' -- and it 'must disadvantage the
3 offender affected by it,' . . . by altering the definition of criminal conduct or increasing the
4 punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted).  The
5 general rule appears at first blush to be quite straightforward, but its application is more complex
6 when one attempts to determine the date to be used for retrospectivity purposes and to determine
7 the "punishment" to which the rule applies.  Several Supreme Court cases must be considered
8 to understand the Court's approach to determining retrospectivity as well as the punishment
9 being affected.

10 In *Lindsey v. Washington*, 301 U.S. 397 (1937), the Court found an Ex Post Facto Clause
11 violation in the application of an amended sentencing statute to a petitioner who committed his
12 crime before its amendment where the amended statute made mandatory that which had been
13 only the maximum sentence under the old statute.  *Id.* at 400.  Although the prisoner could have
14 been given the same 15-year sentence under both the old and amended statutes, applying the
15 amended statute to him violated the Ex Post Facto Clause.  *Id.* at 401.  "It is plainly to the
16 substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence
17 which would give them freedom from custody and control prior to the expiration of the fifteen-
18 year term." *Id.* at 401-02.

19 Several decades after *Lindsey*, the Supreme Court summarily affirmed a lower court's
20 finding of an Ex Post Facto Clause violation where the State had amended a statute to forbid a
21 prisoner from earning good conduct deductions for the first six months after his reincarceration
22 following a parole violation.  *See Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967),
23 *summarily aff'd*, *Scafati v. Greenfield*, 390 U.S. 713 (1968).[2]  The lower court held the

---

[2]Although *Greenfield* is a summary affirmance, it is a judgment on the merits. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975).  Summary affirmances "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions," *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam); *see also Edelman v. Jordan*, 415 U.S. 651, 671 (1974) (summary affirmances are of less precedential value than opinions treating the question on the merits).  The Supreme Court later cited the *Greenfield* summary affirmance with approval in *Weaver v. Graham*, 450 U.S. 24, 32, 34 (1981), and individual justices have cited *Greenfield* as authority for earlier views of the Supreme Court, *see California Dept. of Corr. v. Morales*, 514 U.S. 499, 518-19

6

amendment unconstitutional when applied to a prisoner who committed his crime before the law's amendment. At the time the prisoner originally was sentenced, "he was entitled to earn 'good-conduct' deductions from the sentence imposed throughout the period of his incarceration." *Id.* at 644. The state's practice was to identify a tentative date of release by computing at the outset of a prisoner's sentence the total good conduct credits the prisoner could earn. *Id.* If the prisoner misbehaved and failed to earn any of the time credits already deducted, they were forfeited by an appropriate extension of the tentative date of release, although no forfeiture was provided for violating parole. *Id.* at 644-45. The statute later was amended in 1965 to provide that an inmate who was released on parole and violated parole would not be allowed to earn good-conduct deductions for the first six months after he was returned to prison. *Id.* The amendment did not apply to persons then on parole, but did apply to persons who were still in prison. Greenfield had been sentenced before, but paroled after, the amendment took effect. *Id.* He later violated parole and, upon his return to prison on the parole violation, he was subjected to the amended statute. The amended statute could not be applied constitutionally to persons (such as Greenfield) who committed their crimes before its enactment because it worked to the disadvantage of such persons. *See id.* at 646. *Greenfield* teaches that the relevant date for retrospectivity purposes is the date of the criminal offense rather than the date of the misconduct that impacted the time credits. *Greenfield* also teaches that a change in the law after the criminal offense that negatively impacts the prisoner's future ability to earn time credits is impermissible.

The Supreme Court next considered an ex post facto claim regarding time credits in *Weaver v. Graham*, 450 U.S. 24. The Court emphasized that the appropriate focus was on whether the new statute objectively "lengthen[ed] the period that someone in petitioner's position must spend in prison." *Id.* at 33. The Court held that a statute that reduced the amount of good time credits that could be earned violated the Ex Post Facto Clause when applied to a prisoner whose crime was committed before the statute was enacted. The statutory change decreasing

---

(1995) (Stevens, J., dissenting); *Ramirez v. California*, 476 U.S. 1152, 1152-53 (1986) (White, J., dissenting from denial of petition for certiorari).

7

1 the rate at which good time credits could be earned made the punishment for crimes committed before its enactment "more onerous" and therefore ran "afoul of the prohibition against *ex post facto* laws." *Id.* at 36 (italics in source).

Disagreement now exists in the Supreme Court as to whether an amendment that merely deprives a prisoner of a future opportunity to earn an earlier release is an impermissible ex post facto law. This disagreement is demonstrated in the conflict between the dissenting and majority opinions in a case that, interestingly, wasn't about time credits: *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995) (application of statutory amendment that decreased the frequency of parole suitability hearings under certain circumstances did not violate Ex Post Facto Clause for prisoner convicted before the statute was amended). The dissenting opinion in *Morales* stated that, in past decisions, the Court had noted that an impermissible increase in punishment may result not only from statutes governing the initial sentencing but also from statutes governing parole or early release, and had "held that an increase in punishment occurs when the State deprives a person of the *opportunity* to take advantage of provisions for early release." *Morales*, 514 U.S. at 518 (Stevens, J., dissenting). The majority took a narrower view:

> Our opinions in *Lindsey, Weaver,* and *Miller [v. Florida*, 482 U.S. 423 (1987) (increasing presumptive sentencing range)] suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the "disadvantage" of covered offenders. . . . But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins v. Youngblood*, 497 U.S. 37, 41. . . (1990). After *Collins*, the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "*opportunity* to take advantage of provisions for early release," . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

*Morales*, 514 U.S. at 506 n.3 (italics in source).[3]

In *Lynce v. Mathis* – decided two years after *Morales* – the Court articulated the test as requiring that the retrospective law "'must disadvantage the offender affected by it. . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce*, 519 U.S.

---

[3] *Collins v. Youngblood*, 497 U.S. 37 (1990), does not aid the analysis of the time credit issue here because neither the holding nor the facts concerned time credits. *See id.* at 52 (new statute passed after defendant's sentence was imposed that allowed appellate court to reform (rather than void) a verdict that had assessed a punishment not authorized by law did not violate the Ex Post Facto Clause).

8

at 441. The Supreme Court found an ex post facto violation in a change in Florida law concerning provisional early release time credits awarded to inmates to alleviate prison overcrowding. Lynce had been convicted of attempted murder and sentenced to 22 years in prison at a time when Florida law provided for early release credits to prisoners if prison populations exceeded certain pre-determined levels. Lynce was released from prison in 1992 based in part on his accumulated 1,860 days of overcrowding credits. Later that year, the Florida legislature enacted a statute canceling the overcrowding credits for certain classes of inmates, including those who (like Lynce) had been convicted of attempted murder. The Florida Attorney General opined that the statute should be applied retroactively, so Lynce was arrested and sent back to prison to serve the sentence remaining without counting the overcrowding credits. The Court held that the new law violated the Ex Post Facto Clause. *See Lynce*, 519 U.S. at 441-47. The Court found irrelevant the intent behind the statute granting the overcrowding credits, and instead looked to the effect of the change in the law, i.e., "whether the cancellation of 1,860 days of accumulated provisional credits had the effect of lengthening petitioner's period of incarceration." *Id.* at 443. Like *Weaver*, *Lynce* considered the underlying sentence resulting from the criminal conviction to be the punishment, and examined whether the later-enacted law had the effect of lengthening the prisoner's actual time in prison beyond what it would have been had the change in the law not occurred.

*Lynce* did not resurrect that which *Morales* had put down; instead, the two cases stand for the proposition that not all amendments that might disadvantage the offender (e.g., longer periods between parole hearings (as in *Morales*)) violate the Ex Post Facto Clause, but that a change that disadvantages the prisoner by increasing the actual punishment does violate the Ex Post Facto Clause. *Cf. Williams v. Roe*, 421 F.3d 883, 887 n.1 (9th Cir. 2005) (*Morales* "did not overrule *Lindsey* and *Weaver*, but distinguished them by pointing out that the laws there at issue 'had the purpose and effect of enhancing the range of available prison terms.'")

The Supreme Court rulings can be summarized thusly: An amendment making mandatory a sentence that was the maximum permissible under old law was an impermissible ex post facto law when applied to a person who committed his crime before the amendment.

9

(*Lindsey*) An amendment forbidding prisoners from earning good conduct credits for six months after reincarceration following a parole violation was an impermissible ex post facto law for a prisoner who violated parole after the amendment but had been sentenced under the old law. (*Greenfield*) An amendment that reduced the amount of good time credits that could be earned was an impermissible ex post facto law when applied to a prisoner whose crime was committed before the amendment was enacted. (*Weaver*) An amendment that presented at most a speculative potential of a longer confinement (by increasing intervals between parole hearings for inmates most unlikely to be paroled) did not violate the Ex Post Facto Clause. (*Morales*) An amendment taking away accumulated provisional credits was an impermissible ex post facto law because it lengthened a period of incarceration for person sentenced under the old law. (*Lynce*).

B. Lower Federal Courts Take Differing Approaches

The lower federal courts have taken different approaches to Ex Post Facto Clause claims regarding time credits. Some federal courts – like the California courts – have considered the relevant date for retrospectivity purposes to be the date of the in-prison event and the punishment to be the time credit deprivation. This approach generally results in no ex post facto violation being found. Cases that use the *in-prison event* as the relevant date for determining retrospectivity and the punishment include *Hunter v. Ayers*, 336 F.3d 1007, 1009-10 (9th Cir. 2003) (using date of prison misconduct as relevant date for analysis of amendment to law regarding credit loss and restoration); *Ellis v. Norris*, 232 F.3d 619, 620-21 (8th Cir. 2000) (state court's decision -- that repeal of statute that had allowed prison officials discretion to award additional good time credits did not violate Ex Post Facto Clause – was not contrary to or an unreasonable application of clearly established federal law; prisoner received all the accrued extra good time credits and only lost the ability to be awarded additional good time credits); *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000) (administrative directive, adopted ten years after petitioner was sentenced, disallowed good time credits for inmates classified as security risk group safety threat members; "unlike *Lynce* and *Weaver*, the Directive was not applied retroactively" to petitioner

10

1 because no good time credit earned before the Directive was forfeited and petitioner was not so
2 classified until after the Directive was in effect).[4]

Other federal courts have considered the relevant date to be the date of the criminal offense, conviction or sentencing, and the punishment to be the original sentence for the crime. This approach is more likely to result in a finding of an ex post facto violation. Cases that use the *date of the criminal offense, conviction or sentence* as the relevant date for retrospectivity purposes include *Moor v. Palmer*, 603 F.3d 658, 664 (9th Cir. 2010) (statute that was amended in 1997 to require a psychological review as a precondition for parole for offenses such as petitioner's "was applied retroactively" to petitioner who had been convicted in 1994 at a time when a psychological review was not needed); *Ellis v. Norris*, 232 F.3d 619, 621 (8th Cir. 2000) (State "concedes that the repeal of extra good-time credit applies retroactively, i.e., it applies to prisoners serving sentences imposed prior to the repeal, as well as to those serving sentence imposed afterwards"); *Flemming v. Oregon Bd. of Parole*, 998 F.2d 721, 724 (9th Cir. 1993) (application of amended parole regulation that was enacted after petitioner's offenses to calculate petitioner's sentence reduction "gives rise to the Supreme Court's first 'critical element' for an ex post facto violation").

As discussed later in section D, the split in approaches among the lower courts tends to show the absence of clear guidance from the Supreme Court on the ex post facto analysis of in-prison events.

C.     State Court's Rejection of Hallman's Claim

In Hallman's case, the last reasoned decision is from the Del Norte County Superior Court. That court explained: "The credit change only applies as of the effective date of the

---

[4]The California Supreme Court took this approach in evaluating an earlier amendment to a time credit law in *In re Ramirez*, 39 Cal. 3d 931, 936-37 (Cal. 1985) (amendments that modified manner in which inmates earned and forfeited sentence credits were not retrospective; "[t]here is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence–the issue in *Weaver*–and an increase in sanctions for *future misbehavior* in prison– which is at issue here."); *but see id.* at 939 (Reynoso, J., dissenting) (the amendments are retrospective; "[t]he incorrectness of the majority's line of analysis is demonstrated by the contrary and correct analysis of *Greenfield v. Scafati*").

11

amended statue (sic), and is, therefore, not applied by respondent retrospectively. It is because of the inmate's continued validated gang membership that he remains in the SHU, and subject to the amended provisions of P.C. 2933.6. Petitioner has no right to continue to receive credits under the old statute. The amended statute, since it is applied only prospectively, does not constitute an ex post facto law." Resp. Ex. 7.

The Del Norte court did not cite to *In re Sampson*, 197 Cal. App. 4th 1234 (Cal. Ct. App. 2011), but that is the leading California court case on the issue. *Sampson* rejected a similar challenge to § 2933.6 from another inmate who, like Hallman, had been sentenced and validated as a gang affiliate before § 2933.6 was amended. *Sampson* explained that the Ex Post Facto Clauses of the federal and California constitutions were "analyzed identically." *Sampson*, 197 Cal. App. 4th 1234. Assuming arguendo that the credit-eliminating amendment to § 2933.6 constituted punishment, the state appellate court was "not convinced that it punishes the criminal conduct for which petitioner was imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010." *Id.* at 1241. "It is punishment for gang-related conduct that continued after January 25, 2010." *Id.* at 1242. The *Sampson* court found ongoing misconduct that could be punished based on its reasoning that prison gangs present a serious threat to the safety and security of California prisons; a regulation prohibits inmates from knowingly promoting, furthering or assisting any prison gang; the validation of a prison gang member or associate is done with procedural protections; and the validation represents a determination that the inmate warrants an indeterminate SHU term as a severe threat to the safety of others or the security of the institution. *See id.* at 1242-43. The validated "inmate continues to engage in the misconduct that brings him or her within the amendment's ambit" unless and until prison officials release the validated inmate into the general population, or the inmate becomes eligible for inactive review, or the inmate debriefs. *See id.* at 1243.[5]

---

[5]The *Sampson* court also addressed the lower court's concern that the sheer length of time that it took to complete the debriefing process could result in the deprivation of credit earning opportunity for an inmate who was no longer engaged in the misconduct of gang affiliation. The state appellate court noted that there was no evidence that, if the petitioner completed debriefing, he would be denied all the credits he otherwise would have earned after January 25, 2010. 197 Cal. App. 4th at 1243-44. Thus, there was only the speculative and attenuated possibility of increasing the measure of punishment,

D.    Analysis

If this court were not restricted by 28 U.S.C. § 2254(d), it would conclude that the relevant punishment is the sentence for the crime Hallman committed, and the date for determining retrospectivity is the date of his criminal offense. Under this approach, the amended § 2933.6 was an impermissible ex post facto law when applied to Hallman because it lengthened the punishment for his crime committed in 2000. This approach is truer to the rulings in *Weaver*, *Greenfield*, and *Lynce*, each of which used the time of the criminal offense or sentencing as the critical date for determining retrospectivity, and each of which considered the relevant punishment to be the punishment for the criminal offense. Although neither *Weaver* nor *Lynce* involved a change of credit-earning eligibility due to misconduct occurring after the amendment, *Greenfield* did. The misconduct of gang affiliation in Hallman's case is like the parole violation in *Greenfield*: both took place after the amendment to the law that reduced credit-earning opportunities. Despite misconduct that took place after the amendment, the Supreme Court summarily affirmed a holding that there had been an Ex Post Facto Clause violation in *Greenfield*.

This court does not write on a blank slate, however, and instead must adjudicate Hallman's habeas petition applying the deferential standard of review under 28 U.S.C. § 2254(d). Doing so results in a conclusion that Hallman is not entitled to habeas relief because it cannot be said that the California court's rejection of his claim was contrary to, or an unreasonable application of, clearly established Federal law as set forth by the Supreme Court. Specifically, the California court did not act contrary to, or unreasonably apply, Supreme Court cases in (1) using the date of in-prison misconduct rather than the date of the criminal offense to determine whether the amended § 2933.6 was retrospective, and (2) determining that there was not an increase in the punishment for past events because of the ongoing misconduct of Hallman's gang affiliation.

The Del Norte County Superior Court considered the date of Hallman's prison misconduct

---

and that did not implicate the Ex Post Facto Clause. *Id.* at 1243-44 (citing *Lynce* and *Morales*).

13

1  (rather than the date of the criminal offense) to be the relevant date. *See* Resp. Ex. 7. Using the
2  date of prison misconduct, and viewing gang affiliation as continuing misconduct, led the court
3  to determine that § 2933.6, as amended, was not being applied retrospectively to Hallman.
4  *See* Resp. Ex. 7. That court pointed out that credits earned before the change in the law were
5  unaffected, and the new law only affected future credit-earning.

6  The Del Norte County Superior Court followed California appellate court cases that had
7  held that the amendment to § 2933.6 was not retrospective because it applied only to misconduct
8  occurring after its effective date of January 25, 2010. *See Sampson*, 197 Cal. App. 4th 1234;
9  *In Re Efstathiou*, 200 Cal. App. 4th 725 (Cal. Ct. App. 2011) (same); *see also id.* at 729
10 (distinguishing Supreme Court's decision in *Weaver* by noting that the *Weaver* "inmate's credits
11 were reduced through no fault of his own"). Reasoning similar to that of the California courts
12 has been used by other federal courts to reject Ex Post Facto Clause challenges to § 2933.6.
13 *See Mares v. Stainer*, 2012 WL 345923 (E. D. Cal. 2012) (applying amended § 2933.6 to a
14 prisoner who had been convicted and validated before the effective date of the amendment did
15 not violate the Ex Post Facto Clause because the conduct being punished – active association
16 with a gang – is continuing in nature and has continued after the amendment to § 2933.6); *Munoz*
17 *v. Lopez*, 2012 WL 3260475 (E. D. Cal. 2012) (same); *Gregory v. Lewis*, 2012 WL 2343903 (N.
18 D. Cal. 2012) (Chen, J.) (same).[6]

19 Prison gang affiliation is prohibited in California prisons and is, essentially, prison
20 misconduct. *See* 15 Cal. Code Regs. § 3023(a) ("Inmates and parolees shall not knowingly
21 promote, further or assist any gang as defined in section 3000"); *id.* at § 3000 ("gang" defined).
22 Gang affiliation is viewed as ongoing misconduct by prison officials and state courts, *see In Re.*
23 *Lopez*, 2011 WL 6329840, *7 (Cal. Ct. App. 2011) (unpublished decision).[7] California courts

---

[6] Some other district courts have rejected the ex post facto challenges to § 2933.6 based on the deference required by 28 U.S.C. § 2254(d). *See, e.g., Baisa v. Lewis*, 2013 WL 1117798 (N. D. Cal. 2013 (Koh, J.) (rejecting challenge due to lack of clearly established Supreme Court precedent); *Soto v. Lewis*, 2012 WL 5389907 (N. D. Cal. 2012 (Breyer, J.) (same).

[7] Gang affiliation may be prison misconduct, but it is treated differently from other prison misconduct. Prison officials have chosen to deal with prison gang affiliation as an administrative decision rather than a disciplinary decision: upon gang validation, the inmate may be put in the SHU

14

1 reasonably could determine that a prospective prisoner could not expect the prohibited gang
2 affiliation not to have any impact on the length of the prison term he ultimately will serve upon
3 conviction. Gang affiliation thus would be like any of the other many forms of misconduct in
4 prison that can affect the ultimate length of time the prisoner spends in prison. Assuming, as the
5 California courts have determined, that the relevant date for determining retrospectivity is the
6 date of the in-prison misconduct that causes the prisoner to be ineligible for time credits, the
7 ongoing nature of the misconduct of gang affiliation supports the view that the law has not been
8 applied retrospectively. *Cf. Samuels v. McCurdy*, 267 U.S. 188 (1925) (penalty imposed for
9 possession of liquor that had been obtained before enactment of law was not ex post facto
10 because it punished current conduct of possession); *Murphy v. Ramsey*, 114 U.S. 15, 42-43
11 (1885) (disenfranchisement based on an existing state of bigamy or polygamy not ex post facto
12 even though the bigamy or polygamy may have commenced before the statute was enacted).
13 Even if the prisoner was validated as a gang associate or member before § 2933.6 was amended,
14 he did not lose any past credits earned but only lost the ability to earn credits after the
15 amendment for his ongoing misconduct of being affiliated with a gang. The Del Norte County
16 Superior Court reasonably could have determined that ongoing gang affiliation was just another
17 form of misconduct that could result a disciplinary, housing or classification decision that
18 affected credit-earning eligibility without offending the Ex Post Facto Clause.

19 The California court also reasonably could have concluded that the amendment to
20 § 2933.6 merely caused the loss of an "'*opportunity* to take advantage of provisions for early
21 release" that did not amount to an Ex Post Facto Clause violation. *See Morales*, 514 U.S. at 506
22 n.3 (italics in source). It may not be the better view, but it is not unreasonable to read *Morales*
23 as imposing stricter requirements for an Ex Post Facto Clause claim than existed in *Weaver*, i.e.,
24 that now there must be an actual increase in the penalty by which the crime is punishable, rather

---

27 indefinitely as an administrative placement. Treating the SHU placement as administrative rather than disciplinary placement results in fewer procedural protections being required as a matter of federal due process at the time the prisoner is validated as a gang affiliate. *Compare Toussaint v. McCarthy*, 801
28 F.2d 1080, 1100 (9th Cir. 1986) (procedural protections for administrative decision), *with Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974) (procedural protections for disciplinary decisions).

15

than merely a reduction of the opportunity to obtain early release from the punishment imposed. This reasoning would have allowed the California court to reject the challenge to § 2933.6 without being an unreasonable application of clearly established Federal law as set forth by the Supreme Court.

Finally, the split in approaches to Ex Post Facto Clause claims in the lower federal courts supports the rejection of Hallman's petition, even though those cases were not considering the particular statute he challenges. As discussed in Section B, above, lower federal courts have reached differing conclusions on the critical date for determining retrospectivity, with many courts viewing the critical date as the date of the in-prison conduct affecting the time credits rather than the date of the criminal offense. Lower federal courts also have reached differing conclusions on the punishment allegedly being increased, with some courts viewing the punishment as the punishment for the in-prison misconduct rather than the punishment for the criminal offense. The present situation thus is like that in *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006), where the divergence of lower court decisions on a legal issue was viewed as reflective of "the lack of guidance from [the Supreme] Court." Given the lack of holdings from the Supreme Court on the denial of good conduct credits for ongoing misconduct, it cannot be said that the California court unreasonably applied clearly established federal law. *See generally Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, 'it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law."'") The petition must be denied.

### F.   A Certificate of Appealability Will Issue

Petitioner has "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists would find debatable the district court's assessment of petitioner's claim that the application of the amended version of California Penal Code § 2933.6 to him violated his rights under the Ex Post Facto Clause. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is GRANTED on the sole claim

in the petition. Petitioner is cautioned that the court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: April 19, 2013

SUSAN ILLSTON
United States District Judge